Thank you Judge. May it please the Court, James Kuhn on behalf of the plaintiff. The trial court in this case held that claimant was barred from arguing that she met the 1205 C listings for mental retardation because that issue had not been explicitly raised before the ALJ. We believe that the Supreme Court's decision in Sims v. Apfel makes it pretty clear that this holding should be reversed. We don't think the Court's decision and Ninth Circuit's decision in Menal v. Apfel controls. Two reasons. One, Menal v. Apfel appears to be a decision, certainly on its facts, about introducing evidence rather than about raising issues. To be sure, the Court in Menal does say that claimants in Social Security cases should raise all issues and introduce all evidence, but the facts of that case were that the claimant tried to introduce new statistical evidence at the trial court level. It wasn't about raising a different issue. It was about putting in new evidence. The trial court in this case held that 1205 C had not been explicitly raised. It is not, however, true that the claimant tried to introduce a five-step process in Social Security. The third step in that process is the one at which the administration asks, does this person meet a listing of impairments? And that step has to be gone through in every case. It was gone through in this case. The administrative law judge made a finding that she's got physical and mental impairments, but she does not meet a listing for any of those. I'll use the word any. He said, do not meet or medically equal criteria listed for any disorder in any section of Appendix 1, subpart B, Regulations, Part 404. Right. That was the point. You argued Teplik, right? I argued Teplik. So isn't this kind of not quite the flip side of it, but what you're arguing here is we put in all the evidence and we don't have to say what theory she's entitled, what legal theory she's entitled to, as long as we put in all the factual impairments and we're not changing that, and then the judge just has to decide whether it's 12.05C or 12.05A or whatever. That's right. Unfortunately, this isn't about me, Your Honor. It's about the clients, and they have different cases and they're in different states. Well, it's a different issue. You don't have to have starry, decisive arguments. And this is agency review. It's completely different. But what you're saying here is you did put in all the evidence and the administrative law judge did say that he looked through everything. Right. And as the Supreme Court said in Sims, it's the ALJ's duty to investigate the facts and develop the arguments, both for and against disability. In Sims, of course, they were talking about the Appeals Council, but they used the ALJ's duty as an example to show what the Social Security Administration is supposed to be doing here. And certainly, that's what we did. We put in all the evidence. The judge, ALJ, looked at these IQ scores and said, well, okay, they're below 70, and he characterized them as valid. They were before him. They were in his mind. And since it is his job to develop the arguments, I'm not sure where the trial court gets the requirement that somehow the 1205C listing be articulated by counsel. I will say, I was looking through the record. There's a place in the record in which plaintiff's counsel was examining the claimant's mother and was asking questions about her childhood. Because part of the listing is this impairment must have begun before age 22. And the ALJ cut her off. This is a supplemental excerpt of record 36. Judge, this is relevant to establishing possibly a listing, she said. She did not say 1205C, but she said possibly a listing. And the judge responds, no, I determined the relevance. I think the judge is right there. It is the judge's job to figure out what this means Social Security-wise. I guess what I would ask the government to tell us in its argument is, if we are supposed to articulate the arguments, if we have to specify the issues, where is it that we are supposed to go? Is the court to simply go through the record and look for articulations of issues? And the answer would have to be that's it, because there is no complaint. There's no pleading of any kind. Whether there's an opening statement at the hearing or a closing statement is entirely up to the specific ALJ and varies from ALJ to ALJ. Could you show me in the excerpts where somebody said what impairment they're trying to prove under what listing and where the ALJ said, I'm focusing on this listing? There is no place in which that occurs. There is no place where That's why I asked you. I couldn't find it. That's right. No. I thought I must be missing it. No. There is no place in a Social Security case where the judge says, okay, tell me what There's no pleading. Some judges will ask for an opening statement. In my experience, it's less than half, but I'm sure that counsel will agree with me that that's not part of the process unless the judge happens to want it. But there's no place. So the routine is not reclaim impairment under listing C and here's our evidence for it? There's no place for that to occur. It could occur. We could go in there and compel it to occur, assuming the judge would allow it, but there is no formalized process by which we are to designate what listings we claim or what impairments we rely on. We produce the evidence of all impairments that we can. And many of the claimants are pro se. They are. That's right. Certainly the system is intended to be one in which claimants could be pro se. They can be represented by representatives who are not lawyers. There's a variety of possibilities. That's true. Your argument is that she meets 12.05C. That's correct. So if we were to agree with you, then what's the result here? Do we remand for further consideration or is she entitled to benefits? What would you say on that? You would look at that under the usual criteria. The question is would it be useful to send the case back. There's no question about the IQ scores, that they have been determined to be valid. There's no evidence that, other than that this started when she was very small. She was in special education from first through ninth grade until she finally dropped out of school. And there's no question that she has other severe impairments. The judge so found. I think he found five other impairments. You need only one to meet this listing. So it seems to me that under the various cases that control this issue, and it's within the court's discretion, there is no purpose. How do I tell exactly what wrong listings the ALJ was looking at and ascertain that he just overlooked 12.05C? You can't. And from his decision, it certainly appears that he simply said as a blanket matter, I find she meets no listings. That's all I saw. Well, he found 12.05C, and I want to know, can I tell if he considered it? You cannot tell whether he considered that. Other than that he said I find none, which implies that he considered the whole thing. That he considered all of them, including cancer and orthopedics. Right. Presumably he's somewhat familiar with all of the listings, but his finding is perfectly general. There's no way of knowing which specific listing he considered. He did, however, have these impairments presumably in mind. I'd like to reserve the balance of my time for the rebuttal. Thank you. Thank you, counsel. May I please record David Burdette representing the Commissioner of Social Security. I'm kind of puzzled about something here. I look at the evidence here, and it looks as though, well, there's a problem about credibility and exaggeration. Nevertheless, her case for being very, very slow mentally and having other things wrong with her is quite strong. And it looks like a good fit for 12.05C. She has a 68 IQ, and that says if you have an IQ of 60 to 70 and some other impairment imposing some additional limitations, you're entitled to disability. And I can't quite get where the ALJ says, well, she doesn't really have an IQ of 60 to 70, or she does, but she doesn't have another impairment imposing additional disability. It's hard for me to get my teeth into it when he just says any impairment. I must be missing something. He doesn't say that, but he does say these doctors, paraphrase, but he says these doctors found that she had borderline intellectual functioning, which is inequal to, precludes a diagnosis of mental retardation. It's the same. Well, she had two IQ tests that came to the 60 to 70 range. That's right, but IQ tests are not the whole story. It would be an absurd result to say that because you have this IQ score, therefore the doctor who says that you're not mentally retarded is saying that you are mentally retarded. It's not absurd at all because 12.05c specifies criteria that include an objective measurement, that is, an IQ between 60 and 70. She had one test at 68 and one at 70, and there seems to be no dispute that those are valid scores. So whatever label they choose to put on it doesn't take away from that fact. So I don't understand how you get away from that, and he did find degenerative joint disease, substance abuse, depression, etc. Substance abuse, of course, preclude, is a whole separate category, but there are other. But he does find, and she has seizure disorder, so he specifically finds, if you just look at his findings, it seems unquestionable that it meets 12.05c. I don't see where the not retarded contradicts that. I mean, some doctors may say below 65 is retarded. And so 68 isn't, but that's not what this listing says. It says 60 to 70. My argument would be that the IQ scores create a presumption, but the ALJ has to be able to rebut that presumption. The listings are proxies for a detailed individual medical analysis. What's that? What rebuts? The statement that these doctors are saying that, one, she is not mentally retarded, which they're saying implicitly by labeling it as borderline intellectual functioning. And I understand, Judge Graber, that you're saying it doesn't matter what the label is, but with respect, I disagree with that. And number two, one of the doctors that they're relying on is saying, in fact, she can go back to work as soon as she can resolve. She can go back to her work. She was a stripper, and that's classified as heavy skilled labor. No, she can't go back to that work, but the doctor does say that she can do some work as long as she can resolve her transportation difficulties, etc. I have some difficulty, too, with your general argument, because looking at 12.05, it says the required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied. It's not a guideline. It says the required level is met if you meet the specific criteria that we're going to tell you about, and one of those is C. I just don't understand why that then becomes. Well, it seems to me that. You can't just say, well, yes, she meets all the criteria of 12.05C, but I still don't think she's retarded. Why is that an option for the ALJ? Well. Within the framework of the regulations, I don't see how that's an option to say she meets these criteria, but I'm still not going to find her disabled. It's precisely because of cases like this that it's an option for the ALJ, because the ALJ has to be ideally, hopefully, the ALJ has to be a finder of fact. The ALJ has to go in and not just mechanically apply a cookie cutter, but look at the actual case. I don't know what facts he found. Here's the thing. He says she's not retarded. Well, one kind of retardation is, A, you can't dress yourself and bathe and go to the toilet by yourself. Another kind is, B, IQ of 59 or less. She doesn't meet either of those. She's not retarded in an A or B sense. But then C and D are for people with IQs between 60 and 70. Some people might apply the label retarded. Some people might just say slow. But the label doesn't matter here. All that matters is the number plus an additional limitation, and certainly having convulsions or seizure disorder is an additional limitation. Yes. So I don't get where I can find that the ALJ, by saying that she wasn't retarded, meant any more than that she wasn't an A or B. I may not be having success with this argument, but let me take one more stab at it. Just show me. I'm perfectly willing to see my error. They have ‑‑ this is an argument at step three of the sequential evaluation process, that she meets the listing, they have the burden of proof. They have to show that she is, in fact, mentally retarded. And what I'm trying to argue is that it is absolutely meaningless to apply the listing for mental retardation to a person who not only, and say that this person is presumptively disabled, presumptively unable to do any work at the substantial gainful activity level, to an individual who the doctors say can work and are applying borderline intellectual functioning. But it's not the doctor's job to define the listings. The listings are freestanding things. They're regulations that are binding on the ALJ. So a doctor's personal definition of what mental retardation is seems to me to be irrelevant, so long as there are findings that are responsive to the things in the regulation. There's a case in the Sixth Circuit, and the name of it is Foster. And there's another case in the Eighth Circuit, and the case is named Maggard. And I recognize that those are not controlling. But both of those cases, and they are also not perfectly analogous, but let me give you the sites, Maggard, 166. Are these in your brief? They are not in the brief. We should be having to do a supplemental briefing. No, no, not a supplemental brief. Not a supplemental brief. You just fill out that form that the clerk gives you that we can paste to our bench books. Okay. They're not on all fours. They're analogous because they're in the context of whether the IQ score that is obtained as a grown-up shows that the person had a similar IQ score as a child, was always mentally retarded. But the burden of those cases is to say that there is a presumption that there is. There is a presumption that that IQ score means that the person was equally disabled as a child. But that presumption has to be rebuttable by the ALJ. And that makes sense because this is a fact finding. That's a very different kind of question. That's the case in which the person has a 68 IQ, and the ALJ comes in and shows that they were a really bright child, but they got hit on the head with a baseball bat when they were 25. But that's not this case. I mean, isn't this the case where she comes out of the womb with a smashed face and she's, like, slow from the day of her birth, right? That's what they claim, although she was able to do a skilled job for nine years. Wow. So that's kind of... Did she do that job because that's all she could do, and then people encouraged her to do the job because of low IQ? In other words, was she used? No. Well, I don't know whether she was used or not, and we don't either, but it's a skilled job. I only have 30 seconds left, but can I make a brief argument on Sims v. Affle? It doesn't say what they want it to say. They have admitted in their reply brief that their burden is to show that Sims v. Affle overturned Menal v. Affle. Or that Menal is distinguishable. Or that Menal is distinguishable, but I reject that, too. It certainly doesn't overturn it because Justice Thomas and everyone else agreed that it was a valid appeals counsel issue preclusion. Can I just finish this? My time is up here. So the justices all agreed that it was a valid issue preclusion before the appeals counsel specifically stipulated that they weren't considering the ALJ case. Secondly, the argument, as I take it, and I can be corrected if Mr. Kuhn would put it differently, but the argument, as I take it, on the distinguishment is that Menal said that Menal was about putting in new evidence and not about raising all your issues. But it's not just that. First of all, evidence is put into the record in support of arguments. So it collapses into one thing. And in the second place, Menal specifically said evidence and issues have to be raised. That's what Judge Kuczynski said in that case. So I'm arguing that Sims doesn't touch that. The rule in Menal controls here. And if that's the case, then we don't even get into whether she made a listing because she didn't make the argument before the ALJ. Thank you, counsel. Thank you. Just briefly, Judge, the presumption that the Step 3 listings provide is a conclusive presumption. It doesn't matter that one of the evaluators may have said, well, we think maybe she can work. If she meets the listing, she meets the listing, and that's the end of the story. Steps 4 and 5 are where we test whether someone can do her past work or other work. So this is a conclusive presumption. Secondly, the listings know when they want to say a diagnosis of rheumatoid arthritis is required, they can say that. And they say it in many different places. They do not here say the diagnosis, the magic words, mental retardation must be used. The severity is defined by what the listing itself says. Could I ask you, and I meant to ask you this before, and this goes back to my question about if we agree with you, and I'm not saying that I've reached that yet, but if we agree with you, do we remand for the assessment of benefits or remand for further consideration? And I raise this, putting aside the C aspect, before you get to the C aspect, you have to get to the part of 12.05 that defines mental retardation. And it says mental retardation refers to significant, sub-average, general intellectual functioning with deficits in adaptive functioning initially manifested before the development period. And then it says basically age 22. Is that still an issue, the adaptive functioning? Did the magistrate, excuse me, did the ALJ make any determination on deficits in adaptive functioning? The ALJ made no explicit determination as to any element of 12.05C, including that one. We would argue that when you are in special education for nine grades and then drop out, that you do have significant, at least, deficits in adaptive functioning. Do we need to publish to say how much, if any, of Menel survives and might have since? I would think so, yes. Isn't your argument we don't have to reach that? Because if we take the ALJ at his word, he said she doesn't meet any listing? That is one argument. How could he say that if he didn't check them all? You could say that. I think the reality is that he didn't consider it specifically. You've also argued that Menel is distinguishable, and if we go that route, that's correct. There are ways, certainly, to resolve this case without publishing decision, applying Sins and Menel and figuring that issue out. That's true. Thank you, Kevin. Thank you very much. Lovell v. Barnhart is submitted.
judges: Kleinfeld, Graber, Moskowitz